competitor's products and services. This result is intended, both by Google et. al. and its customers who purchase keywords consisting of the MISHAK Marks. Google sells, and it's customers hope to purchase, the possibility that they will intercept consumers who, due to MISHAKS's extensive and pervasive advertising resulting in invaluable goodwill, are trying to find that nation's largest and most respected and trusted direct- to-consumer retailer of televisions, and personal appliances in the United States.

57. Once intercepted, consumers may click on MISHAK's competitors' links and thus be directed to the competitors' websites. Once there, the consumer, have been distracted, may not ever return to MISHAK's website. Even if the consumer apprentices the diversion, he or she will have to spend time and energy to backtrack or otherwise find MISHAK.

58. Through this practice, Google et. al. traffic in the infringement and dilution of MISHAK marks. Google et. al. have knowingly sold the MISHAK marks and included them in Google's search engine for Google et. al.'s own profit and to increase the competitive advantage of MISHAK's competitors. This practice began after the MISHAK marks were registered and/or became famous and distinctive.

## **The Business of The Other Defendants**

59. AOL, Ask Jeeves, Earthlink, and Netscape et.al. (hereinafter collectively referred to as the "Non-Google Defendants") each operates a website that includes a search engine for locating websites and information on the internet.

60. On information and belief, the Non-Google Defendants pay Google in exchange for Google providing to its web searching platform. By utilizing the Google web searching platform, the Non-Google Defendants display virtually the same results of search queries as those displayed by Google. On information and belief, each of the non-Google defendants also profit every time an internet user clicks on any of the links provided by those search engine results.

//



Dockets.Justia.com

**The Use of Meta Tags**

61. Mega Tags are keywords embedded into the codes of a web page are read by search engines in order to identify the searchers of those pages on the internet that are relevant to that search.

62. Upon the request by a searcher for a specific keyword, the search engine will spew out a list of sites prioritized by, among other things, whether or not the keyword types by the searcher appears in a site's meta tags.

63. However, when one of those key words is a trademark owned by a competitor, and action for the trademark infringement will lie for either dilution or infringement.

64. This is what the defendants and each of them has done to the Plaintiff. They have piggy backed off the hard work and good will of a very small but successful entrepreneur MISHAK, drawing customers away from their intended target.

65. This is not unlike competitor standing out in front of a business establishment during a sale and diverting those customers away to the competitors' location.

The online/cyberspace conduct is the same.

**Harm To Plaintiff**

66. MISHAK has not given the Defendant permission or a licensure to utilize the MISHAK marks for the promotion or sale of its competitor's products.

67. Defendants and certain MISHAK's competitors seek to exploit the hard-earned popularity and success of MISHAK and the products and services sold by MISHAK, under the famous MISHAK marks. In an attempt to illegally capitalize on the MISHAK marks, Defendants have permitted certain of MISHAK's competitors to bid on advertising so their websites are listed in a position above or next to MISHAK's link when a consumer types a search query identical or substantially similar to the MISHAK marks.

68. For example, a consumer can run a search on Google's search engine for "….." on of MISHAK's registered marks with the obvious intent of locating and visiting MISHAK's website. Nonetheless, the first link shown on the Google search results page may be for one of

MISHAK's competitors, such as…Similarly, if a consumer types "…." In the Google search bar, they may be directed to a "results" page in which the first two companies listed at the top are direct competitors-…..as are at leas six of the eight companies…listed along the margin. Search Google for "ineedatv.com" –a domain name owned by and registered to MISHAK-and the consumers are directed to search results that list…"And" at the top of the page. If the consumer clicks on any of these competing websites, Google will be entitled to a fee from these competitors. In addition, these competitors will have obtained a customer, or potential customer, solely as a result of the goodwill and reputation associated with MISHAK and its products and services.

69. A similar, though different and possibly more confusing, search result occurs when a consumer uses one of the Non-Google Defendant's websites to conduct a Google Powered or enhanced search (i.e., where Google provides its underlying search engines). For example, a consumer who conducts a search for MISHAK from Netscape's website is confronted misleadingly with a host of competitor's advertisement. Some competitor's are called Sponsored Links, while others are given priority treatment with graphics at the very top of the search results page. Again, this diversion and confusion is the intended result. Allowing MISHAK's competitors' to intercept consumers looking for MISHAK.

70. The Defendant's search engines are designed and intended to divert and lure consumers from the websites that they intend to visit -e.g. the MISHAK websites-to other websites owned by competing advertisers such as…By design, the Defendants profit when consumers click on competitors' links and visit an advertiser's site. None of this revenue, however, is paid to the own of the trademark for whom the consumer was searching. Thus, Defendants and their advertisers are free-riding on the goodwill and reputation of trademark owners such as MISHAK.

71. Defendant's search engines are inherently deceptive and mislead consumers into believing falsely that the website links to which they are directed via manipulating search "results" links

are sponsored or authorized by and/or originating with the trademark owner for which the user was searching.

72. The manipulated search results engineered by the Defendants fail to inform the consumers that the companies listed herein may have no relationship with-and, indeed, may directly compete with-the trademark owner for which the user was searching.

73. The manipulated search engine results, which are in fact advertisements sold by the Defendants based on a search utilizing the MISHAK marks, dilute the ability of the MISHAK marks to identify MISHAK as a source of its goods and services.

74. In some cases, the competitor companies listed at the top or in the margins of these manipulating search engine results are nebulously identified as sponsored links. This designation is as, if not more, confusing to consumers because the defendants do not indicate by whom these links supposedly are sponsored. Consumers may believe falsely that MISHAK or other mark holders sponsor or otherwise are affiliated with these links.

75. Moreover, the sponsored links are deliberately designed to be virtually indistinguishable from the legitimate mark holders website links. The actual links to the sponsored links are not a different color, nor are they a different typeface or font size. No meaningful effort is made to conspicuously separate the truth from the paid advertisements. Specifically, the defendants could, but do not, advertise the consumer that the so-called sponsored links are in fact paid advertisements that are neither sponsored by, or affiliated with the trademark owner for which the user was searching.

76. MISHAK's current customers have been and will likely continue to be confused about the origin and sponsorship of the companies other than MISHAK listed by the Defendants in their deceptive search engine results.

77. Confusing regarding the companies identified under the Defendant's sear engine results implies an affiliation with MISHAK that has damages and will continue to damage Plaintiff's reputation and customer relationships.

78. Upon information and belief, Defendants causes these advertisements to appear under on the search results pages with the intent to infringe and cause advertisers to infringe on MISHAK's marks. Alternatively, Defendant's acted in reckless disregard for MISHAK's Marks.

79. In short term, Defendant's actions steal customers from MISHAK's website, divert consumers to inferior products and services, erode the distinctiveness of MISHAK's marks, and impair MISHAK's honest and good faith efforts to promote and well its products and services on the internet.

80. Defendant's actions have caused damages and irreparable injury to MISHAK. Further damages and irreparable injury will result if Defendants are allowed to continue violate MISHAK's rights.

81. These deliberate acts constitute trademark infringement and unfair competition under the *Lanham Act, 15 U.S.C. 1114 (1) (a),* dilution of MISHAK's famous marks in violation of the common law and the law of the State of New York, and tortuous interferences with prospective economic advantage in violation with the laws of the State of California.

82. Defendants repeatedly have ignored MISHAK's demands to cease all unauthorized use of the MISHAK Marks and/or words confusingly similar thereto in their keyword Internet Advertising.

83. Defendants' repeated failure to comply with MISHAK's demands manifests their intent to continue to wrongfully compete with, infringe upon and dilute MISHAK's proprietary rights in the MISHAK Marks. MISHAK seeks an injunction to halt Defendant's wrongful conduct and award damages as well as attorneys' fees and expenses for Defendants' willful and wanton conduct.

## FIRST CAUSE OF ACTION

### *Lanham Act*-Trademark Infringement

84. MISHAK incorporates herein by reference each and every allegation contained in paragraphs 1 through 83 with the same forces and efforts as if here fully set forth.

//