Mark Mishak v. Google, Inc. et al Doc. 22 Att. 6


# EXHIBIT F

Dockets.Justia.com

## Michael Page

**From:** Michael Page
**Sent:** Tuesday, February 12, 2008 10:09 AM
**To:** 'rogeragajanian@gmail.com'
**Subject:** Rule 11 Motion
**Attachments:** Rule 11 Motion.pdf; POS Rule 11 Motion.PDF

Mr. Agajanian,

Despite your repeated promises, you have neither dismissed nor amended your complaint. When last we spoke, you acknowledged that you are now aware that the factual allegations in your complaint are entirely false. In particular, you acknowledged that you now know that your client's business does not exist. You told me that you would decide whether to dismiss or amend your complaint over the weekend, and promised to get back to me yesterday without fail, to tell me which you would do. I agreed to hold off writing and serving a Rule 11 motion pending that call. As usual, I never heard back from you. Our patience is at an end. Attached find the service draft of our Rule 11 motion, which we will file with supporting evidence at the conclusion of the statutory waiting period.

Relatedly, Lycos's responsive pleading is currently due February 19, 2008. You have previously agreed to an additional 30-day extension. Please advise by close of business tomorrow whether you will be dismissing or amending your complaint, or I will proceed to file a stipulated motion for extension. I would like to avoid that exercise, if you are indeed going to dismiss or amend.

As always, please feel free to call to discuss this matter.

Michael H. Page
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
tel: (415) 391-5400
fax: (415) 397-7188
www.kvn.com

KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendants
GOOGLE, INC., IAC SEARCH & MEDIA, INC (f/k/a ASK JEEVES, INC.)., LYCOS, INC., and EARTHLINK INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| MARK MISHAK, dba INEEDATV.COM,<br>Plaintiff,<br>v.<br>GOOGLE, INC., AMERICAN ONLINE, INC., NETSCAPE, INC., MICROSOFT NETWORK, INC., ASK JEEVES, INC. EXCITE, INC., WEBCRAWLER, INC., YAHOO, INC., CONVERSA, INC., LYCOS, INC., HOTBOT INC., ALTAVISTA INC., CRAIGSLIST INC., RESPOND INC., INFOSEEK INC., YELLOW PAGES INC., PLANETSEARCH INC., PRONET INC., NORTHERNLIGHT INC., LUCKYSURF INC., COMFIND INC., LIQUIDPRICE INC., EARTHLINK INC., DOES 1-100,<br>Defendants. | Case No. CV07-8258 CAS (JCRx)<br><br>**MOTION FOR RULE 11 SANCTIONS**<br><br>Date: TBD<br>Time: TBD<br><br>Date Comp. Filed: December 20, 2007<br><br>Trial Date: |

Pursuant to Fed. R. Civ. P. 11, Defendants Google Inc., IAC Search & Media Inc., Lycos Inc., and Earthlink, Inc. hereby serve the following Motion for Rule 11 Sanctions on Plaintiff Mark Mishak and his counsel Roger James Agajanian. Failure to withdraw the Complaint in this

action within the timeframe set forth in Rule 11 will result in this motion being filed with the Court and noticed for hearing at the earliest practicable date.

## I. Introduction and Factual Summary

This Complaint is why Rule 11 was written. The Complaint in this matter consists of an extraordinary series of outright lies, grandiose fictions, and incoherent drivel, coupled with wholesale copying of irrelevant factual claims from an unrelated case. One hardly knows where to begin. The Plaintiff, Mark Mishak, purports to operate "ineedatv.com," "**the nation's largest and most respected and trusted direct-to-consumer retailer of televisions, and personal appliances in the United States**." Complaint, ¶62. Ineedatv.com, Mishak avers, "has thousands of customers nationwide and generates annual revenues in excess of hundreds of thousands." *Id.*, ¶ 49. "The company estimates that, each day, it receives in excess of thirty thousand (30,000) 'hits' or visits by customers to its Internet websites and processes hundreds of thousands of Internet transactions every year." *Id.*, ¶ 52.

The Court will be forgiven, however, if it is unfamiliar with this giant of Internet commerce. Ineedatv.com **does not exist**. Mr. Mishak once operated an obscure website at ineedatv.com, which appears to have offered internet buying services, but that website ceased operations in December, 2004. *See* Declaration of Michael H. Page, Exh. __ (printouts from Internet Archive).[1] Similarly, the toll-free number Mishak claims to operate no longer exists. *Id.*, ¶ __.[2] Ineedatv.com is a complete figment.

But this is only the beginning. Mishak also alleges that his (nonexistent) customers are being diverted by his (nonexistent) competitors. These unnamed competitors, Mishak claims,

---

[1] Moreover, there is serious doubt that ineedatv.com was ever a going concern. In today's electronic world, the mark of true obscurity is a company or individual that cannot be found on Google. And yet a search for "ineedatv" finds no relevant links other than to copies of this lawsuit.

[2] Mishak, however, falsely purports to *currently* spend "thousands per year in maintaining, enhancing, and updating its website." Complaint, ¶ 53.

are piggybacking on Mishak's "extensive and pervasive advertising" (*Id.*, ¶ 62) by purchasing Mishak's alleged trademarks as advertising keywords on Google's search engine.[3] *Id.*, ¶6

Such an allegation, even if true, would not support a cause of action: registering words as trademarks does not confer "rights in gross" preventing anyone else from using those words (such as "need" or "TV"), as keywords or otherwise. Numerous courts have addressed the question whether use of a trademark as a Google keyword violates the Lanham Act, and have ruled in Google's favor. Other such cases remain pending. But the Court will not need to reach such intriguing trademark law questions in this case, because once again Mishak is simply making it up.

Not surprisingly, online electronic retailers are not spending their advertising dollars bidding on the name of a nonexistent company as a keyword. In fact, although untold thousands of Google advertisers have bid on literally millions of different keywords, not a single advertiser has **ever** used "ineedatv" as a keyword. **Not once.** Google Decl., ¶ _.

Mishak's purported evidence to the contrary is nothing of the sort. Exhibit 2 to the Complaint is described by Mishak as "a INEEDATV.COM tracking for just one week from 1-8-06 to 1-14-06." *Id.*, ¶ 36. In fact, it is nothing of the sort. Instead, it appears to be a screenshot of a single search for the phrase "I Need A TV" on the AltaVista search engine. Put aside the fact that, contrary to Mishak's allegations, AltaVista has nothing to do with Google.[4] It is, in fact, a direct competitor of Google's. But more to the point, one need only look at the search results to see that Mishak's contentions are incorrect: AltaVista, like Google, highlights in bold the words in its search results that match the keywords contained in the user's query. When a

---

[3] Google's AdWords system provides keyword-targeted advertising. In an oversimplified nutshell, advertisers choose specific words (such as "TV") as keywords. When a user's search query (such as "Color TVs" or "I need a TV") contains the keyword, the advertiser's ad is displayed alongside Google's other search results. The actual system, of course, is far more complex, but those complexities are irrelevant here.

[4] "On information and belief, the Non-Google Defendants pay Google in exchange for Google providing [sic] to its web searching platform." Complaint at ¶66.

query includes a keyword, an advertisement can be triggered regardless whether the query also contains other words. Thus, for example, when one bids on the word "computer," one's ad can appear in response to a query for either "computer" or "Apple Computer."[5] And if someone bids on the keyword "TV," (not surprisingly, a common keyword for electronics retailers), that ad will appear in response to the query "I Need a TV." As can be seen by the ads in Exhibit 2, the keyword that matched was "TV," not "ineedatv."

The next key allegation in Mishak's Complaint is that Google has continued to allow Mishak's "competitors" to purchase "ineedatv.com" as a keyword notwithstanding Mishak's demands that it cease: "Defendants repeatedly have ignored MISHAK's demands to cease all unauthorized use of the MISHAK Marks . . . " (*Id.* at ¶89); "Defendants' repeated failure to comply with MISHAK's demands manifests their intent to continue to wrongfully compete . . . ." *Id.* at ¶90. This allegation is essential to any claim against Google: Even if Mishak's business existed, and even if his competitors were misusing his trademarks, he still could not begin state a derivative claim against Google without evidence that Google had been put on notice of his complaints and had refused to take action.[6] And here again, Mishak is simply making it up. Google is unaware of **any** communication, of **any** sort, from Mishak to Google or any other defendant in advance of this Complaint. Google Decl. ¶__. And despite repeated requests that he provide copies of any such demands we might have overlooked, Mishak has failed to produce them. Page Decl., ¶__.

Each of these problems is fundamental, and each consists of outright falsehoods concerning information uniquely in Mishak's own control. Mishak cannot possibly have alleged that he is "the nation's largest and most respected and trusted direct-to-consumer retailer of

[5] Each search engine typically allows variations, such as the option of requiring an "exact match," (such that "computer" would not match "computers" or "computer sales,"), but the default is to match any word in a query.

[6] To be quite clear, this would not be a sufficient condition, only a necessary one: permitting use of an existing trademark as a keyword is not actionable even with notice.

televisions" by mistake. Allegations that he has spent untold thousands on advertising, or that he has made numerous complaints to Google, or that his competitors are diverting customers he does not have, are not things one says by accident. They are deliberate, outright lies to this Court.

They are not, however, the extent of Mishak's—and his counsel's—misconduct and misrepresentations here. The by-no-means-exhaustive list also includes:

- Defendants all operate search engines (Complaint at 2). In fact, many of the defendants do not operate search engines at all, such as Craigslist, Conversa, Luckysurf, and Comfind).
- "All Defendants listed above sell advertising space on the search result pages known as Banner Ads. . . . These ads are often animated and whimsical." *Id.* ¶*2* In fact, most do not, including Google.
- Each Defendant is a Delaware Corporation doing business in California. *Id.*, ¶ 13-30. Mishak has simply cut-and-pasted the same allegations, without any prefiling investigation into publicly-available information. In fact, some of the Defendants Mishak names do not even exist (for example, Netscape) and others are foreign (for example, Conversa).
- "Mishak has continually used said mark by predominantly displaying it on the packaging . . . for Mishak's products." What products? As far as we can discover, they do not exist and never did.
- Exhibit 1 is Mishak's trademark registration. *Id.* ¶ 38. Exhibit 1 is a copyright registration.
- "The name and mark MISHAK comprises a distinctive part of MISHAK's corporate title and trade name, which trade name has been prominently displayed by MISHAK upon its **home decorating products** and related services . . . ." *Id.*, ¶39. Mishak is not in the

home decorating business. We can explain this one, however: several years ago, a company named American Blind & Wallpaper Factory sued Google (unsuccessfully) in the Southern District of New York. This allegation is copied verbatim from that complaint, with the names (but not the description of American Blind's business) replaced. Page Decl., Exh. __ ("American Blind Complaint").

- "Exhibit 3 is a copy of Plaintiff's Home Page." There is no Exhibit 3, and Plaintiffs' home page has been gone from the Internet for years.
- The MISHAK marks have become "famous" and "distinguish MISHAK and its products and services from competitors"; "the MISHAK Marks have acquired an outstanding tracking (Exhibit 1)." *Id.*, ¶43. As noted above, neither MISHAK products nor ineedatv.com exists. We do not know precisely what an "outstanding tracking" is, but Exhibit 1 isn't one. It is a copyright registration, while Exhibit 2 is a printout of an AltaVista search page. The factual allegation in this paragraph is simply copied from the American Blind Complaint, replacing the word "celebrity" in the original with "tracking" in the copy.
- All Defendants "pay Google in exchange for Google providing [sic] to its web searching platform." *Id.*, ¶66. Although some of the defendants are Google partners, others are (quite famously)Google's competitors: Microsoft, Yahoo!, and AltaVista, for example.
- The Use of Meta Tags (*Id.*, ¶¶67-71). Neither Google nor any of its partners makes any use of metatags, and Mishak makes no allegation that any of his imagined "competitors" have ever included "ineedatv" as a metatag on their websites.[7]
- Injury to Business Reputation and Dilution—GBL 360-1 (Complaint at 21). Mishak, for reasons surpassing understanding, includes in his California federal complaint a New

[7] Mishak and his counsel could easily have determined this: metatags are visible using any browser, simply by selecting "View Source" or "View HTML."

York statutory claim, without any allegations that relate to that state. Why? Because the entirety of Mishak's First through Sixth Causes of Action are simply copied, verbatim save for replacing the names, from American Blind & Wallpaper's New York Complaint. In fact, virtually all of Mishak's **factual** allegations all also copied wholesale from that complaint, including all of his allegations concerning searches he purports to have conducted on Google. He (or his counsel) has simply copied the same detailed recitations of particular search results from that complaint, and has then replaced the "American Blind" terms with ellipses! *Compare* American Blind Complaint at ¶49 *with* Complaint at ¶74.

## II. Argument

Federal Rule of Civil Procedure 11 requires that every pleading be signed by an attorney of record or by the party. Fed. R. Civ. P. 11(a). Further, in relevant part, the rule requires the following:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Civ. P. 11(b). *See also Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1098 (10th Cir. 2003) ("Rule 11 required that an attorney in every case must investigate claims before filing a complaint."); *White v. General Motors Corp., Inc.*, 908 F.2d 675, 681 (10th Cir. 1990) (noting that "[f]ailing to investigate the facts of a claim before filing a complaint is

sanctionable"). Sanctions may be imposed on the "attorneys, law firms, or parties that have violated [Fed. R. Civ. P. 11(b)]." Fed. R. Civ. P. 11(c). The Supreme Court has explained that the "central purpose of Rule 11 is to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts . . . . Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy . . . any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Designed for deterrence, the Rule is governed by an objective standard of reasonableness; no showing of subjective intent or bad faith is required. *Truesdell v. S. Cal. Permanente Medical Group*, 209 F.R.D. 169, 173-74 (C.D. Cal. 2002).

When, as here, a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted). Courts use "the word 'frivolous' to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Levinson v. Baldwin*, No. 03-16532, 425 F.3d 671 (9th Cir. 2005) *(citing Moore v. Keegan Mgmt. Co.,* 78 F.3d 431, 434 (9th Cir. 1996)).

This is perhaps the most extreme violation of Rule 11 imaginable. This is not a case of getting a fact or two wrong at the margins. Rather, virtually every factual allegation contained in the Complaint is wildly, outrageously, dramatically false.

More importantly, most of those falsehoods cannot be anything other than deliberate and knowing. It is inconceivable that a plaintiff who has not operated his website for over three years could mistakenly aver that he is **currently** the largest retailer in his field, that he is earning hundreds of thousands of dollars a year, or that his nonexistent website is getting hundreds of thousands of visits. If this were a *pro se* complaint scrawled on a napkin, this Court would find it sanctionable.

But this Complaint was signed and filed **by a member of the bar**. The Court cannot sanction such conduct. It was counsel, not the client, that copied verbatim the factual allegations

contained in the *American Blind* case. It was counsel, not the client, that signed wideranging allegations concerning the ineedatv.com website without even going so far as to see if it existed. It was counsel, not the client, who filed allegations against more than a score of corporations without even the most cursory inquiry into their operations, relationships, or citizenship. And it was counsel that signed the complaint.

Before bringing this motion, the undersigned counsel made repeated attempts to explain the problems of this complaint to Mr. Agajanian. We wrote and called repeatedly, and were repeatedly assured that Mr. Agajanian would consult with his client and decide whether his Complaint needed to be dismissed. Each time Mr. Agajanian promised to get back to us, we waited patiently, to no avail. In our first conversation, Mr. Agajanian professed surprise at the news that his client's business did not exist, and professed to have relied on his client's representations in filing his complaint. Rule 11, however, does not allow an attorney to file without inquiry. Page Decl., Exh. __.

In our second conversation, Mr. Agajanian admitted that he was now aware that the factual allegations in his complaint were false, and once again requested a few days (to February 11, 2008) to decide whether to dismiss the complaint, promising to respond by then. As usual, that date came and went, requiring the instant motion. *Id.*, ¶__.

## III. Conclusion

Over a score of separate corporations have already been put to the considerable expense of reviewing the complaint, retaining counsel, clearing conflicts, attempting to negotiate with Plaintiff, drafting responsive pleadings when Plaintiff refused to dismiss, and now filing this motion. All of this has been occasioned by a member of the bar who filed a complaint without so much as taking ten seconds to visit his own client's website to find out if it even existed, and who continues to leave that complaint on file when he knows it to be entirely, utterly false.

Such conduct needs to be deterred, by dismissing the Complaint with prejudice, and by ordering Plaintiff and his counsel to pay all fees and costs incurred by each defendant.

Dated: February 12, 2008

KEKER & VAN NEST, LLP

By: /Michael H. Page/

Attorneys for Defendants
GOOGLE, INC., IAC SEARCH & MEDIA, INC (f/k/a ASK JEEVES, INC.)., LYCOS, INC., and EARTHLINK INC.

KEKER & VAN NEST, LLP
MICHAEL H. PAGE - #154913
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendants
GOOGLE, INC., ASK JEEVES, INC. LYCOS, INC., and
EARTHLINK INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| MARK MISHAK, dba INEEDATV.COM,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., AMERICAN ONLINE, INC., NETSCAPE, INC., MICROSOFT NETWORK, INC., ASK JEEVES, INC. EXCITE, INC., WEBCRAWLER, INC., YAHOO, INC., CONVERSA, INC., LYCOS, INC., HOTBOT INC., ALTAVISTA INC., CRAIGSLIST INC., RESPOND INC., INFOSEEK INC., YELLOW PAGES INC., PLANETSEARCH INC., PRONET INC., NORTHERNLIGHT INC., LUCKYSURF INC., COMFIND INC., LIQUIDPRICE INC., EARTHLINK INC., DOES 1-100,<br><br>Defendants. | Case No. CV07-8258 CAS (JCRx)<br><br>**PROOF OF SERVICE**<br><br>Date Comp. Filed: December 20, 2007 |

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On February 12, 2008, I served the following document(s):

**MOTION FOR RULE 11 SANCTIONS**

by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

**by E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Roger James Agajanian
The Waterfront Building
2901 West Coast Highway, Suite 200
Newport Beach, CA 92663
Email: rogeragajanian@gmail.com

Executed on February 12, 2008, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

NOELLE S. NICHOLS